13-1424-cv
Allstate Insurance Co. v. Mun

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2013

(Argued: February 10, 2014     Decided: May 6, 2014)

Docket No. 13-1424-cv

- - - - - - - - - - - - - - - - - -x

ALLSTATE INSURANCE COMPANY,

Plaintiff-Appellee,

- v.-

M.D. DAVID MUN and NARA REHAB MEDICAL, P.C.,

Defendants-Appellants.

- - - - - - - - - - - - - - - - - -x

Before:          JACOBS, LIVINGSTON, and LYNCH, Circuit Judges.

Dr. David Mun and Nara Rehab Medical, P.C. appeal from an order of the

United States District Court for the Eastern District of New York (Amon, C.J.),

denying their motion to compel arbitration.  The district court concluded that

New York law does not empower a medical provider to elect arbitration of a suit

brought by an insurer to recover payments for allegedly fraudulent no-fault claims. We affirm.

EDWARD K. BLODNICK (Steven R. Talan, on the brief), Blodnick Fazio & Associates, P.C., Garden City, NY, for Defendants-Appellants.

ROBERT ALAN STERN (Sandra Patricia Burgos and Daniel Marvin, on the brief), Stern & Montana LLP, New York, NY (William J. Natbony, Cadwalader, Wickersham & Taft LLP, New York, NY, on the brief), for Plaintiff-Appellee.

DENNIS JACOBS, Circuit Judge:

Allstate Insurance Company seeks recovery of payments to Dr. David Mun and Nara Rehab Medical, P.C. (collectively, "Defendants") on the ground that they engaged in insurance fraud. The United States District Court for the Eastern District of New York (Amon, C.J.) denied Defendants' motion to compel arbitration. On appeal, Defendants argue that the New York Insurance Law and the contract provision required by that law grant them the right to arbitrate Allstate's claims.

We conclude that the operative statute, regulation, and contract provision do not provide a right to arbitration in this context. Accordingly, we affirm.

2

**BACKGROUND**

New York's no-fault insurance regime requires that an insurer pay up to $50,000 to cover necessary health expenses for each "covered person" under a "policy of liability insurance issued on a motor vehicle." N.Y. Ins. Law §§ 5101-5109 (McKinney 2014). Covered persons may assign their no-fault benefit rights to qualified health care providers, who then seek payment directly from the insurer. See N.Y. Comp. Codes R. & Regs. tit. 11, § 65-3.11(a) (2014).

Defendants billed Allstate about $500,000 for "Electrodiagnostic Testing" purportedly performed on covered persons between October 2007 and October 2011. Because Allstate is generally required to process each no-fault claim within 30 days of submission, or then be barred from asserting defenses in any subsequent suit or arbitration, see N.Y. Ins. Law § 5106(a); Hosp. for Joint Diseases v. Travelers Prop. Cas. Ins. Co., 879 N.E.2d 1291, 1294-95 (N.Y. 2007), Allstate relied on Defendants' documentation and reimbursed the claims promptly.

In August 2012, Allstate filed suit against Defendants, alleging that they had fraudulently billed Allstate for testing that was fabricated or of no diagnostic value, and seeking recovery under theories of common law fraud and unjust

3

enrichment, and under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), see 18 U.S.C. § 1964(c).

Defendants moved to compel Allstate to arbitrate pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq.; the New York Insurance Law; and the arbitration provision included in Allstate policies.  In April 2013, Chief Judge Amon denied the motion, citing the consensus view in the United States District Court for the Eastern District of New York that medical providers have a right to arbitrate as-yet unpaid claims, but not claims that were timely paid.[1]  See Allstate Ins. Co. v. Mun, No. 12 Civ. 3791 (CBA)(RLM), 2013 WL 1405939, at *1-2 (E.D.N.Y. Apr. 8, 2013).

---

[1] See Gov't Emps. Ins. Co. v. Five Boro Psychological Servs., P.C., 939 F. Supp. 2d 208, 211 (E.D.N.Y. 2013) (Gleeson, J.); Allstate Ins. Co. v. Elzanaty, 929 F. Supp. 2d 199, 207, 211-13 (E.D.N.Y. 2013) (Spatt, J.); Gov't Emps. Ins. Co. v. Grand Med. Supply, Inc., No. 11 Civ. 5339 (BMC), 2012 WL 2577577, at *5-7 (E.D.N.Y. July 4, 2012) (Cogan, J.); Liberty Mut. Ins. Co. v. Excel Imaging, P.C., 879 F. Supp. 2d 243, 262-64 (E.D.N.Y. 2012) (Weinstein, J.); Allstate Ins. Co. v. Khaimov, No. 11 Civ. 2391 (JG)(JMA), 2012 WL 664771, at *3-4 (E.D.N.Y. Feb. 29, 2012) (Gleeson, J.); Allstate Ins. Co. v. Lyons, 843 F. Supp. 2d 358, 376-81 (E.D.N.Y. 2012) (Gleeson, J.); see also Minute Entry, Allstate Ins. Co. v. Yadgarov, No. 11 Civ. 6187 (PKC)(VMS) (E.D.N.Y. Sept. 10, 2013) (Chen, J.); Minute Entry, State Farm Mut. Auto. Ins. Co. v. Giovanelli, No. 12 Civ. 3398 (NGG)(VMS) (E.D.N.Y. Sept. 21, 2012) (Garaufis, J.).

4

**DISCUSSION**

"We review <u>de novo</u> a district court's denial of a motion to compel arbitration." <u>Harrington v. Atl. Sounding Co.</u>, 602 F.3d 113, 119 (2d Cir. 2010).

**I**

Section 5106 of the New York Insurance Law provides, in relevant part:

> (a) Payments of first party benefits and additional first party benefits shall be made as the loss is incurred. Such benefits are overdue if not paid within thirty days after the claimant supplies proof of the fact and amount of loss sustained. . . .
>
> (b) Every insurer shall provide a claimant with the option of submitting *any dispute involving the insurer's liability to pay first party benefits*, or additional first party benefits, *the amount thereof or any other matter which may arise pursuant to subsection (a) of this section to arbitration pursuant to simplified procedures* to be promulgated or approved by the superintendent. Such simplified procedures shall include an expedited eligibility hearing option, when required, to designate the insurer for first party benefits . . . .

N.Y. Ins. Law § 5106(a)-(b) (emphases added). "First party benefits" are defined as "payments to reimburse a person for basic economic loss on account of personal injury arising out of the use or operation of a motor vehicle." <u>Id.</u> § 5102(b).

A regulation implementing § 5106(b) requires that a "policy of liability insurance issued" on a motor vehicle include the following provision:

> Arbitration.  In the event *any person making a claim for first-party benefits* and the Company *do not agree regarding any matter relating to the claim*, such person shall have the option of submitting such disagreement to arbitration pursuant to procedures promulgated or approved by the Superintendent of Financial Services.

N.Y. Comp. Codes R. & Regs. tit. 11, § 65-1.1(a), (d) (emphases added).

The Allstate policies here included this provision, in substance.  But even if an insurance contract omits the required wording, the contract is "construed as if such provisions were embodied therein."  N.Y. Ins. Law § 5103(h).  Defendants therefore may elect arbitration if *either* the Allstate policy provision *or* § 5106(b) provides them that right.

## II

The FAA establishes that "[a] written provision in any . . . contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Any "ambiguities as to the scope of the arbitration clause" are resolved in favor of arbitration.  See,

6

e.g., Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 (1995) (quoting Volt Info. Scis., Inc. v. Bd. of Trs., 489 U.S. 468, 476 (1989)).  Nonetheless, "[w]e have applied the presumption favoring arbitration . . . only where it reflects . . . a judicial conclusion that arbitration of *a particular dispute* is what the parties intended because their express agreement to arbitrate was validly formed and . . . is legally enforceable and *best construed to encompass the dispute*."  Granite Rock Co. v. Int'l Bhd. of Teamsters, 130 S. Ct. 2847, 2859-60 (2010) (emphases added).  Defendants rely on citations to the FAA; but the real question is: do Allstate's policies, which implement requirements imposed by New York law and which must be construed to satisfy those requirements, grant Defendants the right to arbitrate Allstate's fraud claims?  Cf. Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987) ("A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law.").

## III

The arbitration provision in the Allstate policies appears quite broad.  It contemplates arbitration if the claimant and insurance company "do not agree

regarding any matter relating to the claim."  N.Y. Comp. Codes R. & Regs. tit. 11, § 65-1.1(d); <u>see</u> J.A. 146-47.  But it is not as broad as it may seem.

An arbitrable dispute is one between the insurance company and a "person making a claim for first-party benefits."  N.Y. Comp. Codes R. & Regs. tit. 11, § 65-1.1(d).  Defendants are no longer "making a claim."  They *made* a claim; they *made* many claims.  And those claims were promptly paid by Allstate.  Allstate's fraud suit therefore does not raise a dispute between it and a person "*making* a claim for first-party benefits."  The arbitration provision does not apply.

**IV**

**A**

Because the Allstate policies are construed to conform to § 5106(b), <u>see</u> N.Y. Ins. Law § 5103(h), we must also decide whether arbitration under these circumstances is required by statute.

Like the policy wording, § 5106(b) appears broad.  It provides a right to arbitrate "*any* dispute involving the insurer's liability to pay first party benefits." N.Y. Ins. Law § 5106(b) (emphasis added).

8

Critically, however, § 5106(b) provides such an arbitration right only to a "claimant" embroiled in a "dispute involving the insurer's liability to pay first party benefits." Id. "Claimant" is not defined in the statute but necessarily references "a person who claims something"[2]--here, "first party benefits."

Defendants were "claimants" for "first party benefits" when they submitted their claims. If Allstate had disputed those claims without paying them promptly, disputes contemplated by the statute would have arisen. But Allstate paid Defendants' claims in full. Now, years later, when Allstate seeks recovery for losses caused by Defendants' alleged fraud, Defendants are no longer "claimants" asserting a right to first party benefits, and there is no "dispute involving the insurer's liability to pay first party benefits." This dispute involves the *medical provider's liability to the insurer*, under a fraud theory, for what the provider already recovered in the claims process.

Section 5106(b)'s reference to § 5106(a) is telling. Subsection (b) provides an arbitration right only in a "dispute involving the insurer's liability to pay first party benefits, . . . the amount thereof or *any other matter which may arise pursuant*

---

[2] See, e.g., Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/claimant (last visited May 5, 2014).

*to subsection (a) of this section.*"  N.Y. Ins. Law § 5106(b) (emphasis added).  The limitation to "matter[s] which may arise pursuant to subsection (a)" modifies all of the antecedents,[3] and therefore limits the scope of arbitration to matters arising under subsection (a).  Subsection (a), in turn, requires that payments of first party benefits "be made as the loss is incurred" and that those payments become "overdue if not paid within thirty days after the claimant supplies proof of the fact and amount of loss sustained."  Id. § 5106(a).  Section 5106(b)'s arbitration right therefore applies only to disputes arising from the insurer's non-payment during the initial 30-day claims process, not to insurer fraud suits brought later.

---

[3] "Under the rule of the last antecedent, a limiting clause or phrase should ordinarily be read as modifying only the noun or phrase that it immediately follows."  Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V., 651 F.3d 329, 335 (2d Cir. 2011) (internal quotation marks and alterations omitted).  The rule, however, "is not an absolute and can assuredly be overcome by other indicia of meaning."  Barnhart v. Thomas, 540 U.S. 20, 26 (2003).  Given the central focus of the § 5106(a) claims process ("the amount" of insurer liability for first party benefits) and the purpose and structure of the no-fault system, see infra, it is clear enough in context that § 5106(b) contemplates only a dispute arising in the § 5106(a) process.

**B**

The linkage between the 30-day reimbursement process in subsection (a) and the arbitration right in subsection (b) is a feature, not a bug.  Section 5106 creates a no-fault "[f]air claims settlement" procedure.  See id. § 5106.  Subsection (a) defines when insurance companies must pay claims; subsection (b) makes arbitration available for disputes stemming from those claims.  They work together to "create a simple, efficient system that . . . provide[s] prompt compensation to accident victims without regard to fault, and in that way reduce[s] costs for both courts and insureds."  State Farm Mut. Auto. Ins. Co. v. Mallela, 372 F.3d 500, 502 (2d Cir. 2004).  "The primary aims of [the no-fault] system were to ensure prompt compensation for losses incurred by accident victims without regard to fault or negligence, to reduce the burden on the courts and to provide substantial premium savings to New York motorists."  Med. Soc'y v. Serio, 800 N.E.2d 728, 731 (N.Y. 2003) (citation omitted).

New York's arbitration process for no-fault coverage is an expedited, simplified affair meant to work as quickly and efficiently as possible.  See N.Y. Comp. Codes R. & Regs. tit. 11, § 65-4.5 (setting out "[s]pecial expedited arbitration" procedures).  Discovery is limited or non-existent.  See id.  Complex

11

fraud and RICO claims, maturing years after the initial claimants were fully reimbursed, cannot be shoehorned into this system.

Allowing the providers to elect arbitration in these actions would also undercut anti-fraud measures that the New York legislature encouraged. The state requires insurers to file plans "for the detection, investigation and prevention of fraudulent insurance activities." N.Y. Ins. Law § 409(a). These plans must provide for the "coordination with other units of an insurer for the *investigation and initiation of civil actions*" to recover amounts paid in medical provider frauds. Id. § 409(c)(4) (emphasis added).

Our reading of § 5106 allows insurers to actively combat fraud without impairing the system of prompt insurer reimbursement. In an informal letter opinion, the New York Insurance Department agrees, and contemplates "actions" (i.e., court proceedings) to recover money paid on fraudulent claims[4]:

---

[4] Though courts ordinarily grant little deference to informal letter opinions on questions of "pure statutory reading and analysis," In re Union Indem. Ins. Co., 699 N.E.2d 852, 856 (N.Y. 1998), recent state decisions have favorably cited and quoted this particular opinion, see Lincoln Gen. Ins. Co. v. Alev Med. Supply, Inc., 917 N.Y.S.2d 810, 811 (App. Term. 2d Dep't 2011). Regardless of the deference due, we agree with the Insurance Department's interpretation of the statute.

> The purpose of N.Y. Ins. Law § 5106 and its implementing regulation is simply to provide for the prompt payment of covered No-Fault expenses due a claimant. . . .
>
> The New York No-Fault reparations law . . . is in no way intended and should not serve as a bar to *subsequent actions* by an insurer for the recovery of fraudulently obtained benefits from a claimant, where such action is authorized under the auspices of any other statute or under common law. There is nothing in the legislative history or case law interpretations of the statute or in Insurance Department regulations, opinions or interpretations of the statute that supports the argument that the statute bars *such actions*.
>
> The payment of fraudulently obtained No-Fault benefits, without available recourse, serves to undermine and damage the integrity of the No-Fault system, which was created as a social reparations system for the benefit of consumers. To conclude that the No-Fault statute bars the *availability of other legal remedies*, where the payment of benefits were secured through fraudulent means, renders the public as [sic] the ultimate victim of such fraud, in the form of higher premiums based upon the resultant increased costs arising from the fraudulent actions. The Legislative enactment of . . . Section 409 . . . clearly evinces the important public policy interest in the prevention of insurance fraud for the protection of consumers in New York.

Letter from Lawrence Fuchsberg, Supervising Attorney, N.Y. Ins. Dep't, to

Francis J. Serbaroll, Cadwalader, Wickersham & Taft, Appellee's Br. at ADD-1-2

(Nov. 29, 2000) (emphases added) (citations omitted).

**C**

Defendants rely on state court cases that are inapposite or of dubious value. One case rules that waiver of a substantive right under a contract does not also waive a right to arbitrate under the same contract, a point with no bearing on this appeal. See Riese v. Local 32B-32J, Serv. Emps. Int'l Union, No. 74-11, 1986 WL 84814, at *1-2 (Sup. Ct. N.Y. Cnty. Oct. 15, 1986). Others, such as Nyack Hospital v. Government Employees Insurance Co., 526 N.Y.S.2d 614, 615 (App. Div. 2d Dep't 1988), involve only the initial claims process, not a later recovery action. And a Short Form Order that Defendants attach to their reply brief is based entirely on an unspecified "applicable automobile insurance contract" and provides almost no relevant analysis because the insurer's arguments were rejected as untimely. See Short Form Order, Am. Transit Ins. Co. v. Elzanaty, Index No. 601543/13 (N.Y. Sup. Ct. Nassau Cnty. Oct. 9, 2013) (Appellant's Reply Br. at Addendum B). Defendants are left to rely on a Civil Court opinion from 1983, which is distinguishable, incompatible with more recent precedent, and issued by a court of limited jurisdiction. See

14

Country–Wide Ins. Co. v. Frolich, 465 N.Y.S.2d 446 (Civ. Ct. Kings Cnty. 1983).[5]

The weight of New York authority holds that the 30-day process in § 5106(a) does not constrain later insurer actions seeking recovery for fraud. See Lincoln Gen. Ins. Co., 917 N.Y.S.2d at 811 ("[W]here, as here, an insurer timely pays a claim within the 30-day claim determination period, the insurer is not foreclosed from affirmatively commencing an action to recover the amounts paid on the claim when the insurer later discovers that the claim is fraudulent." (citations omitted)); Fair Price Med. Supply Corp. v. Travelers Indem. Co., 803 N.Y.S.2d 337, 340 (App. Term 2d Dep't 2005) ("[A]n insurer precluded from

---

[5] Frolich interpreted a substantively identical predecessor of § 5106(b) to grant a medical provider the right to arbitrate an insurer's suit to recover a mistaken overpayment. Id. at 447-48. As Judge Gleeson has observed, however, an overpayment claim is distinguishable because fraud claims "do not contest entitlement to benefits under the terms of the no-fault law itself but seek to recover money through an independent right of action." Lyons, 843 F. Supp. 2d at 379 n.10 (citing Ryder Truck Lines, Inc. v. Maiorano, 376 N.E.2d 1311, 1314 (N.Y. 1978)). And in any event, more recent and more reasoned state precedent is to the contrary. Specifically, a 2001 New York Supreme Court decision, relying on § 5106's text, the Insurance Department's view, and the New York legislature's encouragement of insurer fraud-based civil actions, holds that § 5106(b) does not apply if "the insurer has already paid . . . benefits and discovers fraud on the part of a health care provider, who has submitted fraudulent claims." Progressive Ne. Ins. Co. v. Advanced Diagnostic & Treatment Med., P.C., Index No. 601112/00, slip op. at 15-16 (Sup. Ct. N.Y. Cnty. July 25, 2001) (Appellee's Br. at ADD-17-18).

15

defending a claim based on provider fraud is not without remedy; after paying such a claim, the insurer, for example, may have an action to recover benefits paid under a theory of fraud or unjust enrichment . . . ."), aff'd, 837 N.Y.S.2d 350 (App. Div. 2d Dep't 2007), aff'd, 890 N.E.2d 233 (N.Y. 2008); Carnegie Hill Orthopedic Servs. P.C. v. GEICO Ins. Co., 19 Misc. 3d 1111(A), at *5-6 (N.Y. Sup. Ct. Nassau Cnty. 2008) (allowing insurer to bring fraud counterclaim outside 30-day period).

New York courts hold that insurer fraud suits may be pressed long after the 30-day period for processing claims. And as § 5106(b) provides, the right to demand arbitration exists only during and within that process. It follows that Defendants have no right to elect arbitration of Allstate's fraud claims under § 5106.

**CONCLUSION**

For the foregoing reasons, the order of the district court is affirmed.