13-3963-cv
Lloyd v. J.P. Morgan Chase & Co.

# UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

August Term, 2014

(Argued: October 8, 2014     Decided: June 29, 2015)

Docket No. 13-3963-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

JEFFREY LLOYD, on behalf of himself and those
similarly situated, ELLEN SZYMKIEWICZ, on
behalf of herself and those similarly situated,
GRAEME PATEY, PETER PICCOLI, SCOTT
VANHOOGSTRAAT, JOSHUA STROUSE,
JENNIFER ZAAT-HETELLE, ROBERT M.
JOHNSON, SAMIR MAKAR,
                              Plaintiffs,

LAWRENCE R. KAUFMANN, SUSAN HYMAN,
ALAN B. KRICHMAN, JEFFREY LAMMERT,

                 Plaintiffs-Appellees,

          - v.-

J.P. MORGAN CHASE & CO., CHASE
INVESTMENT SERVICES CORP.,

<u>Defendants-Appellants</u>.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Before:      JACOBS, SACK, and DRONEY, <u>Circuit Judges</u>.

J.P. Morgan Chase & Co. and Chase Investment Services Corp. appeal from

an order of the United States District Court for the Southern District of New York

(Swain, <u>J.</u>), denying their motion to compel arbitration.  We conclude that the

district court correctly read the arbitration agreement to incorporate the rules of

the Financial Industry Regulatory Authority ("FINRA"), which bar FINRA

arbitrators from hearing claims that have been brought as putative class or

collective actions.  Affirmed.

Judge Sack concurs <u>dubitante</u> in a separate opinion.

<div style="margin-left: 45%;">

SAM S. SHAULSON (Thomas A. Linthorst, <u>on the brief</u>), Morgan, Lewis & Bockius LLP, New York, New York, <u>for Defendants-Appellants</u>.

RACHEL M. BIEN (Adam T. Klein and Deirdre Aaron, <u>on the brief</u>), Outten & Golden LLP, New York, New York, <u>for Plaintiffs-Appellees</u>.

</div>

---

\* The Clerk of Court is respectfully directed to amend the official caption in this case to conform with the caption above.

LEAH M. NICHOLLS, Public Justice, P.C., Washington, D.C., for Amicus Curiae Public Justice, P.C.

DENNIS JACOBS, Circuit Judge:

Former employees of Chase Investment Securities Corp. (now J.P. Morgan Securities, LLC) filed a putative class and collective action against J.P. Morgan Chase & Co. and Chase Investment Services Corp. (collectively, "Chase") for violations of state and federal overtime laws. Chase moved to compel arbitration pursuant to an arbitration clause in the plaintiffs' employment contracts. The United States District Court for the Southern District of New York (Swain, J.) denied the motion. The court interpreted the clause to cover only claims or controversies "required to be arbitrated by the FINRA Rules," ruled that it thus incorporated the arbitrability restrictions of the FINRA Code of Arbitration Procedure for Industry Disputes ("FINRA Rules"), and applied the current version of FINRA Rule 13204, which prohibits arbitration of claims brought as putative class or collective actions.

On appeal, Chase contends that the arbitration clause incorporates FINRA Rules that govern arbitration procedure, but not rules (like Rule 13204) that govern the scope of arbitrable issues. Chase argues that the district court erred

3

by: (1) construing the arbitration clause to incorporate Rule 13204, and (2) applying the amended version of Rule 13204 in effect at the time of Chase's motion, rather than the earlier version that was in effect when plaintiffs entered into their contracts.  We affirm.

## BACKGROUND

The following facts are drawn from plaintiffs' First Amended Class Action Complaint, which we presume to be true at this juncture.  See, e.g., DeJesus v. HF Mgmt. Servs., LLC, 726 F.3d 85, 87 (2d Cir. 2013).

Chase employs Financial Advisors to sell financial products at its numerous branch locations.[1]  Chase classifies these employees as overtime-exempt and does not pay them for hours worked in excess of forty per week. Plaintiffs Lawrence R. Kaufmann, Susan Hyman, Alan B. Krichman, and Jeffrey Lammert, who were employed as Financial Advisors in New York and New Jersey, contend that Chase's practices violate the overtime provisions of the New

---

[1]    The term "Financial Advisors" covers job titles that include "Personal Financial Advisors, Independent Financial Advisors, Financial Advisor Associates, Senior Financial Consultants, Investment Sales Representatives, and/or RIS Team Leaders."

4

York Labor Law ("NYLL"), the New Jersey State Wage and Hour Law ("NJSWHL"), and the Fair Labor Standards Act ("FLSA"). They plead: (1) NYLL claims on behalf of a putative Rule 23 class of current and former Financial Advisors employed in New York; (2) NJSWHL claims on behalf of a putative Rule 23 class of current and former Financial Advisors employed in New Jersey; and (3) FLSA claims as part of a 29 U.S.C. § 216(b) collective action of current and former Financial Advisors employed nationwide.[2]

Chase is registered with FINRA, a self-regulatory organization that adopts and enforces rules for its member firms. See Securities and Exchange Commission Release No. 34–56145, 72 Fed. Reg. 42169, 42170 (Aug. 1, 2007). As licensed securities representatives employed by Chase, plaintiffs registered with FINRA and executed the Uniform Application for Securities Industry Registration or Transfer ("Form U4"), under which they agreed to arbitrate any disputes with Chase that are required to be arbitrated by the FINRA Rules.

In addition to the Form U4, plaintiffs executed an employment agreement (the "Chase Agreement") that contains the following arbitration clause:

---

[2] Kaufmann and Lammert are members of the putative New York class, while Hyman and Krichman are members of the putative New Jersey class. All four plaintiffs are members of the FLSA collective action.

5

> Any claim or controversy concerning you arising out of or in connection with the business activities of [Chase], your activities and/or your appointment as a registered representative or your employment and/or the termination thereof <u>required to be arbitrated by the FINRA Rules</u> shall be resolved by individual (not class or collective) arbitration <u>in accordance with the Code of Arbitration Procedure of the FINRA</u> . . . , and in accordance with applicable law. . . . Further, no claims shall be arbitrated on a class or collective action or collective or class-wide basis.

(emphases added).

The arbitration clause thus incorporates the FINRA Rules, but with disputed effects. The issues are (1) whether the clause incorporates FINRA Rule 13204 at all, and (2) whether the parties agreed to apply (a) the version of Rule 13204 in effect at the time they entered into the Chase Agreement or (b) the current, amended version that took effect before Chase filed its motion to compel. The earlier version refused FINRA arbitration of class action claims, while the current version refuses FINRA arbitration of collective action claims as well. The difference between the two versions is thus potentially decisive as to plaintiffs' FLSA claims, which are brought as a collective action.

At the time plaintiffs signed the Chase Agreement,[3] FINRA Rule 13204

---

[3] Other members of the putative class and collective action--including Jeffrey Lloyd, the lead plaintiff below--either did not execute or executed a different

provided:

> (a) Class action claims may not be arbitrated under the Code.
>
> (b) Any claim that is based upon the same facts and law, and involves the same defendants as in a court-certified class action or a putative class action, . . . shall not be arbitrated under the Code, unless the party bringing the claim files with FINRA [a notice of non-participation or withdrawal from the class].
>
> . . .
>
> (d) A member or associated person may not enforce any arbitration agreement against a member of a certified or putative class action with respect to any claim that is the subject of the certified or putative class action until:
>
> - The class certification is denied;
>
> - The class is decertified;
>
> - The member of the certified or putative class is excluded from the class by the court; or
>
> - The member of the certified or putative class elects not to participate in the class or withdraws from the class according to conditions set by the court, if any.
>
> This paragraph does not otherwise affect the enforceability of any rights under the Code or any other agreement.

FINRA Rule 13204 (effective Dec. 15 2008 to July 8, 2012) ("Old Rule 13204"). In

version of the Chase Agreement, and are not parties to this appeal.

2012, FINRA relabeled the existing sections and added a new one:

> (b) Collective Actions
>
> (1) Collective action claims under the Fair Labor Standards Act . . . may not be arbitrated under the Code.
>
> (2) Any claim that involves plaintiffs who are similarly-situated against the same defendants as in a court-certified collective action or a putative collective action, or that is ordered by a court for collective action at a forum not sponsored by a self-regulatory organization, shall not be arbitrated under the Code, if the party bringing the claim has opted-in to the collective action.
>
> . . .
>
> (4) A member or associated person may not enforce an agreement to arbitrate in this forum against a member of a certified or putative collective action with respect to any claim that is the subject of the certified or putative collective action until the collective action certification is denied or the collective action is decertified.

FINRA Rule 13204 (effective July 9, 2012) ("New Rule 13204"). Thus, following the 2012 amendment, neither class nor collective action claims can be arbitrated under the FINRA Rules.

Plaintiffs commenced suit on December 19, 2011. On January 14, 2013, Chase moved to compel arbitration based on the Chase Agreement's arbitration clause. The district court denied the motion, reasoning that the arbitration

8

clause requires arbitration of only those claims required to be arbitrated under

the FINRA Rules and that, under New Rule 13204, Plaintiffs' claims cannot be

arbitrated. We affirm.[4]


## DISCUSSION

"A district court's denial of a motion to compel arbitration is reviewed <u>de</u>

<u>novo</u>." <u>Specht v. Netscape Commc'ns Corp.</u>, 306 F.3d 17, 26 (2d Cir. 2002).


## I

Under the Federal Arbitration Act ("FAA"), "[a] written provision in . . . a

contract . . . to settle by arbitration a controversy thereafter arising out of such

contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. In

interpreting a validly formed arbitration agreement, we apply a "presumption of

arbitrability" if the "arbitration agreement is ambiguous about whether it covers

the dispute at hand." <u>Granite Rock Co. v. Int'l Bhd. of Teamsters</u>, 561 U.S. 287,

---

[4] Because we conclude that the district court correctly interpreted the arbitration clause to incorporate the FINRA Rules, we do not consider the argument--advanced by <u>amicus curiae</u> Public Justice, P.C.--that FINRA members cannot contractually avoid the FINRA Rules.

301 (2010); see also Goldman, Sachs & Co. v. Golden Empire School Fin. Auth., 764 F.3d 210, 215 (2d Cir. 2014).

However, this "policy favoring arbitration" is "merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." Granite Rock, 561 U.S. at 301-02 (internal quotation marks omitted). Construction of an arbitration agreement is a matter of contract interpretation, and "as with any other contract, the parties' intentions control." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 682 (2010) (internal quotation marks omitted).

So if an arbitration clause is best construed to express the parties' intent *not* to arbitrate certain disputes, that intent controls and cannot be overridden by the presumption of arbitrability. Granite Rock, 561 U.S. at 302; see also Allstate Ins. Co. v. Mun, 751 F.3d 94, 97 (2d Cir. 2014). The presumption is a soft one, and has effect "only where it reflects, and derives its legitimacy from, a judicial conclusion that arbitration of a particular dispute is what the parties intended because their express agreement to arbitrate . . . [is] *best construed* to encompass the dispute." Granite Rock, 561 U.S. at 303 (emphasis added). The presumption

10

may tip the scale if an agreement is truly ambiguous, see Allstate, 751 F.3d at 97, but it does not alter the controlling question: is the arbitration agreement "best construed to encompass the dispute"?

Citing cases from the Supreme Court and this Circuit, Chase urges that, under the presumption, an arbitration agreement must be interpreted to cover a dispute if the agreement is "susceptible" of such an interpretation, even if the contrary one may be considerably more plausible. Chase further argues that the presumption of arbitrability can be rebutted only by "positive assurances" that a dispute is non-arbitrable.

Most of the cases on which Chase relies were decided in the peculiar and exceptional context of collective bargaining agreements. See Wright v. Universal Mar. Serv. Corp., 525 U.S. 70, 78 (1998) (cautioning against extending "positive assurances" language in AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986), to other contexts). Moreover, every case cited by Chase predates Granite Rock, which made clear that the presumption of arbitrability is a tool for resolving genuine ambiguity, not a bias in favor of arbitration. 561 U.S. at 301-02.

We thus review the district court's interpretation under Granite Rock: does

the Chase Agreement reflect the parties' intent to arbitrate plaintiffs' claims?

## II

The disputed phrase in the arbitration clause is "required to be arbitrated by the FINRA Rules," and the principal interpretive issue is what words that phrase is intended to modify in the following sentence:

> Any claim or controversy concerning you arising out of or in connection with the business activities of [Chase], your activities and/or your appointment as a registered representative or your employment and/or the termination thereof <u>required to be arbitrated by the FINRA Rules</u> shall be resolved by individual (not class or collective) arbitration in accordance with the Code of Arbitration Procedure of the FINRA . . . , and in accordance with applicable law.

(emphasis added).

Since class and collective action claims cannot be arbitrated under New Rule 13204, the question becomes whether the phrase "required to be arbitrated by the FINRA Rules" applies to the whole category of claims and controversies (in which case plaintiffs' claims cannot be arbitrated), or only to claims arising out of plaintiffs' employment (in which case plaintiffs' claims may be arbitrated as claims arising out of Chase's business activities or plaintiffs' activities as

12

registered representatives).

The district court held that the arbitration clause requires individual arbitration only to the extent such arbitration is "required . . . by the FINRA Rules." Since, as discussed, plaintiffs' class and collective action claims are precluded from arbitration by FINRA Rule 13204, they fall outside the scope of the arbitration clause. We agree.[5]

The arbitration clause begins with two nouns ("claim or controversy") followed by three modifiers:

- "concerning you";

- "arising out of or in connection with the business activities of [Chase], your activities and/or your appointment as a registered representative or your employment and/or the termination thereof"; and

- "required to be arbitrated by the FINRA Rules."

The natural reading of this sentence is that each modifier modifies "claim or

---

[5]     We decline plaintiffs' invitation to accord collateral estoppel effect to the Ninth Circuit's decision in Alakozai v. Chase Inv. Servs. Corp., 557 F. App'x 658 (9th Cir. 2014), which also interpreted the Chase Agreement. Offensive collateral estoppel is inappropriate "in cases where a plaintiff could easily have joined in the earlier action," but declined to do so in favor of a "wait and see" approach. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 330 (1979). Since plaintiffs opposed consolidation with Alakozai in the proceedings below, they cannot now benefit from a favorable ruling in Alakozai.

13

controversy," so that only a claim or controversy that satisfies each of the three criteria "shall be resolved by . . . arbitration."

That reading is grammatically sound and makes substantive sense. The arbitration clause requires the whole category of claims arbitrable under the Chase Agreement to be arbitrated "in accordance with" the FINRA Rules. It is therefore logical that the clause also incorporates the limitations of the FINRA Rules as to the *scope* of arbitrable claims. If the universe of arbitrable claims consists solely of claims "required to be arbitrated by the FINRA Rules," then such claims may always be arbitrated "in accordance with" the FINRA Rules.

Chase's competing interpretation is both ungrammatical and substantively flawed. Chase argues that the absence of a comma before the phrase "required to be arbitrated by the FINRA Rules" compels the conclusion that it modifies only the immediately preceding words, "your employment and/or the termination thereof." This result is required, Chase argues, by the rule of the last antecedent, which provides that "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows," Barnhart v. Thomas, 540 U.S. 20, 26 (2003). See also Am. Int'l Grp. v. Bank of Am. Corp. 712 F.3d 775, 781-82 (2d Cir. 2013).

Fastidious use of punctuation is a virtue in a drafter and often commands respect, but here, the absence of the comma does not support Chase's position. First, while the last antecedent rule can be useful, it "is not an absolute and can assuredly be overcome by other indicia of meaning." Barnhart, 540 U.S. at 26. Second and more importantly, courts have applied the rule only when the last antecedent can grammatically be modified by the limiting phrase. Hence, in Barnhart, the Supreme Court read the phrase "which exists in the national economy" to modify the immediately preceding noun "work."[6] Id. Likewise, in United States v. Kerley, we read the restrictive phrase "pursuant to the law of a State or of an Indian tribe" as applicable only to the immediately preceding noun, "administrative process." 416 F.3d 176, 179 (2d Cir. 2005) (interpreting "any amount determined under a court order or an order of an administrative process *pursuant to the law of a State or of an Indian tribe*" (emphasis added)).

In this case, the restrictive phrase "required to be arbitrated by the FINRA Rules" follows two other restrictive phrases that unquestionably modify the only

---

[6] The statute in Barnhart read: "'An individual shall be determined to be under a disability only if . . . he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work *which exists in the national economy* . . . .'" 540 U.S. at 23 (quoting 42 U.S.C. § 423(d)(2)(A)) (emphasis modified).

15

available antecedent: "claim or controversy." The phrase "your employment and/or the termination thereof" is integral to the phrase "arising out of . . . your employment and/or the termination thereof," which in turn modifies "claim or controversy." The last antecedent rule does not apply because there is only one antecedent to which all of the modifiers must refer: "claim or controversy."

Chase's interpretation is also substantively flawed. As discussed, the arbitration clause unquestionably requires arbitrable claims to be resolved before FINRA and "in accordance with the FINRA Rules." But it is impossible to arbitrate plaintiffs' class and collective action claims before FINRA, since New Rule 13204 prevents FINRA arbitrators from entertaining class and collective action claims. See FINRA Rule 13203(a) ("The Director [of FINRA Dispute Resolution] may decline to permit the use of the FINRA arbitration forum if the Director determines that, given the purposes of FINRA and the intent of the Code, the subject matter of the dispute is inappropriate."). Again, the district court's reading obviates this interpretive problem: if the only claims that are arbitrable under the Chase Agreement are those that are "required to be arbitrated by the FINRA Rules," then every arbitrable claim may be resolved by FINRA arbitrators.

That the arbitration clause calls for "individual (not class or collective) arbitration" does not assist Chase. That language simply echoes New Rule 13204, which prohibits individual arbitration of claims that are the subject of putative class or collective actions, unless the party asserting those claims declines to proceed on a class or collective basis or the court decertifies (or declines to certify) the class or collective action.[7] New Rule 13204(a)(2), (b)(2).

Finally, we are unpersuaded by Chase's argument that interpreting the arbitration clause to incorporate the FINRA Rules would violate the interpretive canon against surplusage. It is true that plaintiffs separately signed Form U4 agreeing to arbitrate claims required to be arbitrated by the FINRA Rules, but there is nothing unusual about an employer's conforming its in-house documents to requirements that already exist in standard FINRA forms. In any event, the surplusage canon does not apply because the Chase Agreement and Form U4 are not provisions of a single contract. Cf. Int'l Multifoods Corp. v. Commercial

---

[7]    The Chase Agreement contains no waiver of plaintiffs' right to participate in class and collective action *lawsuits*. Cf. Cohen v. UBS Fin. Servs., Inc., No. 12 Civ. 2147 (BSJ) (JLC), 2012 WL 6041634, at *1 (S.D.N.Y. Dec. 4, 2012) ("[Y]ou waive any right to commence, be a party to or an actual or putative class member of any class or collective *action* arising out of or relating to your employment." (emphasis added)).

17

Union Ins. Co., 309 F.3d 76, 86 (2d Cir. 2002) ("We disfavor contract interpretations that render provisions of a contract superfluous.").

Accordingly, we hold that the district court correctly interpreted the arbitration clause to require arbitration of only those claims "required to be arbitrated by the FINRA Rules."

### III

We next consider whether the arbitration clause incorporates Old Rule 13204 (which was effective when plaintiffs entered into the Chase Agreement) or New Rule 13204 (which became effective prior to Chase's motion to compel and remains the current rule). The former barred FINRA arbitration of class action claims, while the latter added a parallel provision concerning collective actions.

As the district court observed, the arbitration clause contains no wording on the effect (if any) of amendments to the FINRA Rules. However, as discussed supra, the arbitration clause requires that arbitrable claims be resolved "in accordance with" the FINRA Rules; and New Rule 13204 expressly provides that any claim that is part of a pending class or collective action suit "shall not be arbitrated under the Code." New Rule 13204(a)(2), (b)(2). It cannot be disputed

18

that New Rule 13204 governs FINRA arbitrators. So unless the arbitration clause tracks amendments to the FINRA Rules, some claims arbitrable under the clause (in this case, FLSA collective action claims) would be required to be arbitrated before a body that does not entertain them. See FINRA Rule 13203(a) ("The Director [of FINRA Dispute Resolution] may decline to permit the use of the FINRA arbitration forum if the Director determines that, given the purposes of FINRA and the intent of the Code, the subject matter of the dispute is inappropriate.").

We think that the parties could not have intended to arbitrate claims before an arbitral body that, under its own rules, cannot hear them. As the district court concluded: the parties must have intended the FINRA Rules (as they may be amended) to govern both the scope of arbitrability and the manner of arbitrating claims between Chase and its employees.

Chase argues that the district court's ruling raises a problem of retroactivity. However, contracts can and often do contain terms that are subject to the impact of future developments. A party that agrees to arbitrate before a particular forum according to the rules of that forum assumes the risk that the forum's rules might change.

19

In any event, the amendment of Old Rule 13204 did not upset expectations. Since 1999, FINRA has informally taken the position that collective action claims cannot be arbitrated, even under Old Rule 13204.  See FINRA Regulatory Notice 12-28.  FINRA amended the rule to make its position explicit only after district courts refused to apply Old Rule 13204 to FLSA collective actions.  Id.; see Velez v. Perrin Holden & Davenport Capital Corp., 769 F. Supp. 2d 445, 447 (S.D.N.Y. 2011); Gomez v. Brill Sec., Inc., No. 10 Civ. 3503 (JSR), 2010 WL 4455827, at *2 (S.D.N.Y. Nov. 2, 2010); Chapman v. Lehman Bros., Inc., 279 F. Supp. 2d 1286, 1290 (S.D. Fla. 2003).  The 2012 amendment was thus the formal statement of a longstanding FINRA position.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the district court.

13-3963
Lloyd v. J.P. Morgan Chase & Co.

SACK, Circuit Judge, concurring dubitante[1]:

I fully agree with the majority insofar as it concludes that the phrase

"required to be arbitrated by the FINRA Rules" in the employment agreement

(the "Chase Agreement") modifies the phrase "[a]ny claim or controversy" such

that, under the terms of the Chase Agreement, only those claims, if any, that are

required to be arbitrated under the FINRA Rules are subject to arbitration.  *See*

*ante* at 18.

I write to express my concern, however, about the panel's conclusion that

New Rule 13204, which amended Old Rule 13204 (as those terms are defined in

the majority opinion) by adding collective actions to the list of those not

arbitrable under FINRA rules, necessarily applied to the instant case even though

---

[1]  *See Bierenbaum v. Graham*, 607 F.3d 36, 59 (2d Cir. 2010) (Calabresi, J., concurring dubitante); *Aurecchione v. Schoolman Transp. Sys. Inc.*, 426 F.3d 635, 639 (2d Cir. 2005) (Kearse, J., concurring dubitante); *Feldman v. Allegheny Airlines, Inc.*, 524 F.2d 384, 390 (2d Cir. 1975) (Friendly, J., concurring dubitante); *see also* Debra Cassens Weiss, *7th Circuit Judge Writes One-Sentence "Maybe" Concurrence; Was it a "Dubitante" Opinion?*, ABA JOURNAL (June 3, 2015), http://www.abajournal.com/news/article/7th_cABA rcuit_judge_writes_one_sentence_maybe_concurrence_was_it_a_dubitante/?utm_ campaign=weekly_email&job_id=150603AT&utm_medium=email&utm_source=maestr o (suggesting use of the term "dubitante" as appropriate for a concurrence that concludes the majority *may* be right).

at the time that the Chase Agreement was entered into, Old Rule 13204, not New Rule 13204, was in effect.[2]

***The Majority's Approach.*** The parties paid relatively little attention to this issue in the district court and on appeal. That may account for the majority's giving it what seems to me to be rather short shrift.

In a two-paragraph analysis addressed to the "problem of retroactivity" raised by Chase, the majority observes that it is not unusual for contract terms to be "subject to the impact of future developments," and that in this case the future developments were a change in "the forum's rules." *Id.* at 19. Moreover, because FINRA had already "informally taken the position that collective actions[3] cannot be arbitrated, even under Old Rule 13204," the majority concludes that therefore "the amendment of Old Rule 13204 did not upset expectations." *Id.* at 20.

Separately, in addressing the intent of the parties at the time the contract was signed, the majority asserts that because the arbitrable claims are required to be resolved "in accordance with" the FINRA Rules, and the operative rule 13204 (New Rule 13204) provides that a collective action "shall not be arbitrated" by

---

[2] Further complicating matters, Old Rule 13204, arguably permitting collective actions, was still in effect even at the time this litigation was commenced. *See ante* at 18.

[3] The plaintiffs' collective action claims were brought under the FLSA.

FINRA, the Chase Agreement must therefore be read to incorporate New Rule 13204. *Id.* at 18-19. The majority is of the view that to hold otherwise would require the Court to find that the parties intended to arbitrate their claims before a body that "under its own rules, cannot hear them," and that "the parties could not have intended" such a result. *Id.* at 19.

I think a more detailed and thorough inquiry would be necessary before I could comfortably reach a firm conclusion as to whether or not the provisions of New Rule 13204 apply to this dispute.

*The Relative Importance of the Issue.* I am not sure the majority is wrong. But I see no reason to engage in such a "detailed and thorough inquiry" myself in order to become more certain than I am, one way or the other, for at least two reasons. First, should I come to a firm view that New Rule 13204 cannot be applied here, it will not matter to the parties because a majority of this Court holds otherwise; the New Rule will be applied in any event, and the holding will remain the same. Second, and more importantly, were I to reach a contrary view that is persuasive, it will be of little use to anyone. Nearly three years have elapsed since the adoption of the New Rule. Its retroactive effect, if any, should become increasingly irrelevant to the resolution of collective actions

3

contractually designated as "arbitrable by the FINRA rules" because disputes will increasingly arise out of contracts entered into more recently than was the Chase Agreement, and after the New Rule 13204, clearly foreclosing collective FINRA arbitrations, became effective.   In light of what seems to be the likely limited nature of our holding on this point, I write briefly to do no more than articulate the basis for my doubt as to the majority's methodology.

***Another Approach.***  In *Wong v. CKX, Inc.*, 890 F. Supp. 2d 411 (S.D.N.Y. 2012) (Koeltl, J.), the United States District Court for the Southern District of New York considered a dispute at least superficially similar to that addressed in the case at bar.  The court sought to determine whether Section 22 of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), Pub. L. No. 111-203, Title IX, §§ 922(b)-(c), 929A, 124 Stat. 1848, 1852 (2010), which modified the arbitration rules outlined in the Sarbanes-Oxley Act ("Sarbanes-Oxley"), 18 U.S.C. § 1514A(e)(2), was intended to apply retroactively to an employment contract containing an arbitration provision that was otherwise governed by Sarbanes-Oxley.  *Wong*, 890 F. Supp. 2d at 420-21.  The contract had been entered into prior to Dodd-Frank taking effect.  Before 2010, complaints alleging a violation of Sarbanes-Oxley's whistleblower protection provision could therefore

be made subject to mandatory arbitration pursuant to an agreement between the parties. Dodd-Frank amended that rule: "No predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under [the Sarbanes–Oxley whistleblower protection provision]." *Id.* at 421 (quoting 18 U.S.C. § 1514A(e)(2) (brackets in original)).

The defendant in *Wong* moved to compel arbitration in a "whistleblower" suit pursuant to an employment contract that required such arbitration and that was entered into before Dodd-Frank went into effect. The question before the district court was whether the plaintiff could take advantage of the new law's prohibition even though it was enacted after she entered into the contract; indeed all the relevant behavior of the parties occurred before Dodd-Frank became law. "Therefore," noted the court, "the issue [was] whether to apply the [later] amendment to the present dispute." *Id.*

The court began its analysis by stating widely accepted general principles.

> Generally, "retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). However, the Supreme Court has also instructed that there are many situations in which courts must "apply the law in effect at the time [they] render[ a] decision." *Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 711 (1974).

5

*Id.*

The district court then looked to the Supreme Court's decision in *Fernandez–Vargas v. Gonzales*, 548 U.S. 30 (2006), which provides a "three-step process for determining whether a statute should be retroactively applied to affect some allegedly vested right that existed prior to a statute's enactment or to impose some new burden." *Wong*, 890 F. Supp. 2d at 421 (citing *Fernandez–Vargas*, 548 U.S. at 37-38). Step one requires a determination as to "whether Congress has expressly prescribed the statute's proper reach." *Fernandez–Vargas*, 548 U.S. at 37. If the answer is no, the court moves to step two, deciding "whether applying the statute to the person objecting would have a retroactive consequence in the disfavored sense of affecting substantive rights, liabilities, or duties on the basis of conduct arising before its enactment." *Id.* (internal quotation marks and brackets omitted). "If the answer is yes, [the court] then appl[ies] the presumption against retroactivity by construing the statute as inapplicable to the event or act in question owing to the absence of a clear indication from Congress that it intended such a result." *Id.* at 37-38 (internal quotation marks and brackets omitted).

The *Wong* court ultimately reached a decision roughly similar to that reached by the majority in this appeal – the new arbitration rules applied to an

6

old arbitration agreement.  The court did so, however, by engaging in step two of the prescribed analysis:  It concluded that "[t]he right to have a dispute heard in an arbitral forum is a procedural right that affects the forum that will decide the substantive rights of the parties.  Therefore, applying the present law to this dispute would not have a disfavored retroactive consequence."  890 F. Supp. 2d at 423.

Other district courts have considered the issue addressed in *Wong*.  At least one has arrived at the same conclusion; others have not.  *Compare Pezza v. Investors Capital Corp.*, 767 F. Supp. 2d 225, 233-34 (D. Mass. 2011) (concluding that Dodd-Frank § 922 changed only the procedural rights of the parties and therefore could be applied retroactively), *with Taylor v. Fannie Mae*, 839 F. Supp. 2d 259, 263 (D.D.C. 2012) ("the Court here fails to see how a retroactive application would not impair the parties' rights possessed when they acted"; retroactive effect not given; arbitration compelled) (citing *Henderson v. Masco Framing Corp.*, 2011 WL 3022535, 2011 U.S. Dist. LEXIS 80494 (D. Nev. July 22, 2011)).  Irrespective of their outcomes, though, these courts proceeded as had the *Wong* court by applying the test set forth in *Fernandez–Vargas*.

To be sure, the case before us is plainly distinguishable from both

*Fernandez–Vargas* and *Wong*, most obviously because FINRA rules, although

perhaps comparable to the statutes considered by the district courts for present

purposes, are not federal statutes. *But see Sacks v. S.E.C.*, 648 F.3d 945, 950 (9th

Cir. 2011) (applying the retroactivity test articulated in *Fernandez–Vargas* to

FINRA Rules). These decisions do, however, illustrate the complexity involved

in determining the retroactive application of new rules to existing contracts. In

the case at bar, the majority reaches its conclusion without acknowledging or

grappling with that complexity.

Moreover, even assuming *arguendo* that none of the retroactivity

principles or frameworks employed by the district courts in the Dodd-Frank

cases is applicable in the situation presented here, the majority's approach is not

free from doubt. The Chase Agreement presents an issue of contractual

ambiguity as to the parties' intent with respect to the incorporation of new

FINRA rules. When faced with ambiguity, courts ordinarily consider "[e]xtrinsic

evidence of the parties' intent." *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562,

569, 780 N.E.2d 166, 170 (2002). The district court does not appear to have

engaged in such an inquiry; the majority has largely avoided unpacking the issue

8

by opining that "the parties could not have intended to arbitrate claims before an arbitrable body that, under its own rules, cannot hear them." *Ante* at 19. As noted, the majority asserts that a FINRA arbitral body will not hear plaintiffs' collective action claims because the New Rule 13204 indicates that it should not do so. But I am unaware of an instance in which FINRA arbitrators formally declined to "grandfather-in" the parties that were previously subject to the Old Rule, which had been read by at least some district courts[4] to classify the plaintiffs' FLSA claims as an arbitrable controversy.

If "impossibility of performance" or "frustration of purpose" ultimately manifests itself, then there is long-standing precedent to which courts in this Circuit can look to address the parties' interests. *See United States v. Gen. Douglas MacArthur Senior Vill., Inc.*, 508 F.2d 377, 381 (2d Cir. 1974). If it is determined that the parties are contractually bound to have collective claims arbitrated by a FINRA arbitral body and should that body refuse, courts – including this Court if necessary – can then decide how the dispute should be resolved.

---

[4] *See e.g.*, *Velez v. Perrin Holden & Davenport Capital Corp.*, 769 F. Supp. 2d 445, 447 (S.D.N.Y. 2011) ("Every court to address whether an FLSA collective action is arbitrable pursuant to [Old Rule 13204] has found in favor of arbitrability.").

9

***Conclusion.*** For the foregoing reasons, "I join the majority's [decision],

albeit a mite queasily," Order Denying Petition for Rehearing, *United States v.*

*Guevara*, 298 F.3d 182 (2d Cir.), *on reconsideration*, 298 F.3d 124 (2d Cir. 2002)

(Calabresi, J., concurring dubitante), insofar as it addresses the question of the

retroactivity of New Rule 13204 and the arbitrability of collective claims.